Jared D. Scott (#15066)
ANDERSON & KARRENBERG
50 W. Broadway, Suite 600
Salt Lake City, UT 84101-2035
Telephone: 801-534-1700
jscott@aklawfirm.com

Kip B. Shuman (#145842) *pro hac forthcoming*
SHUMAN, GLENN & STECKER
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (303) 861-3003
kip@shumanlawfirm.com

Rusty E. Glenn (#39183) *admitted pro hac vice*
SHUMAN, GLENN & STECKER
600 17th Street, Suite 2800 South
Denver, CO 80202
Telephone: (303) 861-3003
rusty@shumanlawfirm.com

Brett D. Stecker (#86242) *pro hac vice forthcoming*
SHUMAN, GLENN & STECKER
326 W. Lancaster Avenue
Ardmore, PA 19003
Telephone: (303) 861-3003
brett@shumanlawfirm.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| STEFFEN MAUTE, derivatively on behalf of MERIT MEDICAL SYSTEMS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>FRED P. LAMPROPOULOS; RAUL PARRA; A. SCOTT ANDERSON; JILL D. ANDERSON; THOMAS J. GUNDERSON; F. ANN MILLNER; LYNNE N. WARD; and JUSTIN F. LAMPROPOULOS,<br><br>Defendants,<br><br>– and –<br><br>MERIT MEDICAL SYSTEMS, INC., a Utah corporation,<br><br>Nominal Defendant. | **PLAINTIFF STEFFEN MAUTE'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT**<br><br>Case No. 2:21-cv-00346-DBP<br><br>Magistrate Judge Dustin B. Pead |

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................. 1

II.   BACKGROUND OF THE ACTION ..................................................... 2

    A.  Factual Background ................................................................. 2

    B.  Procedural Background and Settlement Negotiations ................... 3

    C.  The Settlement Terms ................................................................. 5

III.  ARGUMENT ................................................................................ 7

    A.    The Procedure for Preliminary Approval of a Derivative Action in Federal Court Is Well Established ................................................................. 7

    B.    The Standards for Judicial Approval of Derivative Settlements .......................... 8

        1.    The Law Favors Settlements ................................................... 8

        2.    The Role of the Court in Approval of a Derivative Settlement ................. 9

    C.    The Settlement Should Be Preliminarily Approved and Then Finally Approved After Notice to Current Merit Stockholders ................................ 10

        1.    The Settlement Was Fairly and Honestly Negotiated .............................. 10

        2.    The Settlement Was Negotiated When Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt ...... 12

        3.    The Settlement's Value Outweighs the Possibility of Future Relief in View of the Serious Risks Posed by Continued Litigation ...................... 14

        4.    The Parties Agree That the Settlement Is Fair and Reasonable ............... 15

    D.    The Agreed-To Fee and Expense Award Is Fair and Reasonable ........................ 16

    E.    The Proposed Notice to Current Merit Stockholders Is Reasonable ................... 17

    F.    The Nominal Incentive Award Is Reasonable and Justified ............................... 19

i

IV.     PROPOSED SCHEDULE OF EVENTS ..........................................................................20

## I.    PRELIMINARY STATEMENT

This memorandum is submitted by Plaintiff Steffen Maute ("Plaintiff") in support of his unopposed motion for preliminary approval of the proposed settlement (the "Settlement") of the above-captioned shareholder derivative action (the "Action") brought on behalf of nominal defendant Merit Medical Systems, Inc. ("Merit" or the "Company") against certain of its current and former officers and directors.  The terms of the Settlement are fully set forth in the August 23, 2022 Stipulation and Agreement of Settlement (the "Stipulation").[1]

The Settlement completely and finally resolves the derivative claims asserted in the Action. The Settlement is the result of extensive arm's-length negotiations between the parties to the Action (the "Parties"), who were assisted by a highly experienced neutral mediator, Michelle Yoshida, Esq. ("the Mediator" or "Ms. Yoshida") of the mediation, arbitration, and dispute resolution firm Phillips ADR Enterprises ("Phillips ADR").  In sum, the proposed Settlement calls for the implementation of a series of significant corporate governance measures (the "Reforms") which are designed to enhance the way Merit is governed overall and help prevent a recurrence of the events and alleged misconduct that gave rise to the Action.  The negotiation of the Reforms was hard-fought by sophisticated parties and the Parties strongly submit that the Settlement constitutes an appropriate resolution of a case of substantial complexity.

As such, the Settlement confers substantial benefits upon Merit and Current Merit Stockholders and is an excellent resolution for Merit.  As a result of the comprehensive benefits

---

[1] Unless otherwise defined herein, all defined terms shall have the meanings as set forth in the Stipulation, which is attached hereto as Exhibit 1.

obtained in the Settlement, Merit and Current Merit Stockholders are positioned to reap the long-term benefits of strong corporate governance by virtue of the Reforms.

Plaintiff respectfully requests that the Court enter the [Proposed] Preliminary Approval Order (the "Preliminary Order") attached to the Stipulation as Exhibit B: (a) granting preliminary approval of the Settlement; (b) directing that notice be provided to Current Merit Stockholders; and (c) scheduling a final hearing, at which the Court will consider final approval of the Settlement. In determining whether preliminary approval is warranted, the narrow issue before the Court is whether the Settlement is within a range of what might be found to be fair, reasonable, and adequate, such that notice of the Settlement should be provided to Current Merit Stockholders and that a hearing be scheduled for final settlement approval.

## II.     BACKGROUND OF THE ACTION

### A.     Factual Background.

In late 2018, Merit acquired (i) Cianna Medical, Inc. ("Cianna"), a manufacturer of devices for the treatment of breast cancer that was the largest acquisition in the Company's history; and (ii) certain assets of Vascular Insights, LLC ("Vascular Insights") associated with the manufacturing and sales of ClariVein, a specialty infusion catheter used to treat superficial venous disease. Among other things, Plaintiff's Verified Stockholder Derivative Complaint (the "Complaint") alleged that, beginning in February 2019, the Individual Defendants[2] breached their fiduciary duties to Merit or its stockholders (including alleged breaches of the duty of care, candor,

---

[2] The "Individual Defendants" to the Action are: Fred P. Lampropoulos, Raul Parra, A. Scott Anderson, Jill D. Anderson, Thomas J. Gunderson, F. Ann Millner, Lynne N. Ward, and Justin F. Lampropoulos, each of whom is a current or former member of Merit's Board of Directors (the "Board") and/or a current or former senior officer of Merit (collectively, the "Individual Defendants" and together with Merit, the "Defendants").

or loyalty) in connection with materially false and misleading statements about the Cianna and Vascular Insights acquisitions. The Complaint alleged that the false and misleading statements included assertions that Merit had successfully integrated Cianna and maintained its sales force, and that sales of ClariVein products were driving Merit's growth.

      **B.**      **Procedural Background and Settlement Negotiations.**

On October 29, 2020, Plaintiff sent a demand letter to the Company's corporate secretary which demanded the inspection of internal Merit books and records (the "Inspection Demand") pursuant to Utah Code Ann. § 16-10a-1602 ("§ 16-10a-1602").  By letter dated November 9, 2020, the Company responded to the Plaintiff's Inspection Demand. Counsel for Plaintiff and Merit thereafter engaged in several meet and confer discussions concerning the scope of documents which the Company would produce.  Counsel for Plaintiff and Merit also began negotiating a confidentiality agreement which would govern Plaintiff's use of the documents produced by the Company (the "Inspection Production").

Upon reaching an agreement as to the scope of documents that would be produced pursuant to § 16-10a-1602, Merit made an initial Inspection Production to Plaintiff on November 9, 2020, subject to a commitment of confidentiality which was formalized in writing on November 30, 2020.  A Supplemental Inspection Production took place on December 9, 2020.

On May 20, 2021, Plaintiff initiated this Action on behalf of Merit by filing the Complaint in this Court under seal. The Complaint contained allegations based, in part, on information derived from and citations to certain non-public documents obtained via the Inspection Demand pursuant to § 16-10a-1602. The Complaint asserted claims against each of the Individual Defendants for breach of fiduciary duty and unjust enrichment under Utah law based on the

allegations described above, as well as sales of Merit stock made by certain of the Individual Defendants.

Shortly after the filing of the Complaint, the Parties to the Action agreed to a temporary stay of litigation. As a part of the stay, Defendants agreed to produce discovery documents to Plaintiff which had been produced in the related federal securities class action captioned *In re Merit Medical Systems, Inc. Securities Litigation,* Case No. 8:19-cv-02326-DOC-ADS (C.D. Cal.) (the "Securities Action"). The Defendants thereafter produced to Plaintiff, on a rolling basis, eight (8) separate productions totaling approximately five-hundred twenty-five thousand (525,000) pages of internal corporate documents.

The Parties participated in a full-day, in-person mediation session with the Mediator in Corona Del Mar, California on October 5, 2021 (the "First Mediation"). While a resolution was not reached by the Parties at the conclusion of the First Mediation, the Parties made substantial progress and thereafter continued to engage in extensive communications and further efforts over the following weeks and months aimed at reaching a settlement. These communications were both direct between counsel for the Parties, and through the Mediator. As a result of these extensive negotiations, the Parties were ultimately able to reach a tentative agreement on many of the Reforms contained within the Settlement on February 22, 2022.

With substantial progress having been made, the Parties participated in a second mediation session with the Mediator on February 25, 2022, which was focused on negotiating an agreed-to payment of attorneys' fees and reimbursement of expenses to Plaintiff's Counsel (the "Second Mediation"). The Parties were not able to reach agreement on this final remaining settlement term at the conclusion of the Second Mediation, even with the assistance of the Mediator. Nevertheless,

the Parties subsequently continued good faith negotiations for over three months following the Second Mediation. On June 14, 2022, the Mediator issued a double-blind "Mediator's Proposal" to the Parties calling for the payment of $1 million in combined attorneys' fees and expenses to Plaintiff's Counsel. On June 22, 2022, the Mediator communicated that all Parties had agreed to the Mediator's Proposal and the $1 million Fee and Expense Award, subject to final approval of the Company's Non-Party Directors, and also subject to Court approval. This final term completed the Parties' settlement negotiations.

Counsel for the Parties thereafter prepared the Stipulation, which was presented to Merit's Non-Party Directors. Merit's Non-Party Directors unanimously voted to approve the Settlement as reflected in this Stipulation at a meeting on July 22, 2022.

**C.    The Settlement Terms.**

As a condition of the Settlement, Merit has agreed to institute and maintain the Reforms for a period of not less than four (4) years.[3] Stipulation at 4-5. As the Defendants have expressly acknowledged, the filing of the Action substantially contributed to the relief achieved in the Settlement, and the Reforms confer a substantial benefit on Merit and Current Merit Stockholders. Stipulation ¶2.2. Moreover, the Company's Non-Party Directors, exercising their independent business judgment, believe that the Settlement is in the best interests of, and provides substantial benefit to, Merit and Current Merit Stockholders. Stipulation ¶2.2.

The Reforms include an array of procedural and structural governance measures specifically designed to address the alleged corporate shortcomings giving rise to the Action, while

---

[3] The Reforms shall remain in place at Merit for not less than four (4) years, subject to the right to alter or amend such terms or policies in the event a majority of Merit's Independent Directors determine that modification thereof is in the best interests of the Company and its stockholders.

improving the Company's overall compliance capabilities to further align the interests of the Company with those of its stockholders. The Reforms, which are set forth fully at Exhibit A to the Stipulation, include, *inter alia*: (i) the addition of two (2) new independent directors to the Board; (ii) revised "Criteria for Membership" on the Board in the Company's Corporate Governance Guidelines (the "Governance Guidelines"); (iii) enhanced responsibilities for the Company's Lead Independent Director, per amendments to the Governance Guidelines; (iv) a comprehensive review of the Company's Insider Trading Policy to be conducted by Merit's Independent Directors, Chief Legal Officer, and Chief Compliance Officer, with a formal written report to be provided thereafter to the full Board; (v) enhanced duties of the Board's Audit Committee per amendments to the Company's Audit Committee Charter; and (vi) enhanced reporting to the Board regarding a number of critical issues, including but not limited to, pending compliance issues, whistleblower issues, reports of wrongdoing by management, potential or actual issues concerning the status of ongoing new or planned products, and the effectiveness of Merit's policies, procedures, systems and controls designed to ensure regulatory compliance.

Corporate governance enhancements such as the Reforms in the proposed Settlement have formed the basis of settlements of countless stockholder derivative actions, as strong corporate governance is fundamental to a corporation's well-being and success.[4] Indeed, "[c]ourts have recognized that corporate governance reforms such as those achieved here provide valuable

---

[4] *See, e.g., In re Google Inc. S'holder Derivative Litig.*, No. CV-11-04248. Order (N.D. Cal. Jan. 21, 2015) (approving settlement where relief was in the form of corporate governance enhancements); *Barovic v. Ballmer*, No. C14-0540-JCC, 2014 WL 7011840 (W.D. Wash. Dec. 10, 2014) (same); *Rosenfeld v. Campanelli, et al.*, Civil Action No. 13-135711-CZ Final Order and Judgment (Mich. St. Ct., Oakland Cnty. July 7, 2015) (same).

benefits to public companies." *In re NVIDIA Corp. Derivative Litig.*, No. 06-06110, 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008) (citation omitted); accord *In re Rambus Inc. Derivative Litig.*, No. 06-3513, 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) (recognizing that the "substantial benefits" of the derivative settlement which "provides long term remedial measures that are specifically designed to protect the shareholders.").[5]

## III.    ARGUMENT

### A.    The Procedure for Preliminary Approval of a Derivative Action in Federal Court Is Well Established.

As stated in the *Manual for Complex Litigation* § 13.14, at 171 (4th ed. 2004), "[f]irst, the court reviews the [proposed settlement] preliminarily to determine whether it is sufficient to warrant public notice and a hearing." Just as in a class action, "district courts have developed a jurisprudence whereby they undertake some review of the settlement at preliminary approval, but perhaps just enough to ensure that sending notice to the class is not a complete waste of time." *Murray v. US Foods, Inc.,* No. 18-2614-DDC-TJJ, 2020 U.S. Dist. LEXIS 144259, at *14 (D. Kan. Aug. 11, 2020) (citing *Newberg on Class Actions* § 13:10). "The general rule is that a court will grant preliminary approval where the proposed settlement is neither illegal nor collusive and is within the range of possible approval." *Id.* "While the Court will consider [the Tenth Circuit's] factors in depth at the final approval hearing, they are a useful guide at the preliminary approval stage as well." *Id.* (citing *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488,

---

[5] *See also Mohammed v. Ells*, No. 12-cv-1831-WJM-MEH, 2014 U.S. Dist. LEXIS 118796, at *11 (D. Colo. Aug. 26, 2014) (approving derivative settlement where "the corporate governance reforms provided for as part of the settlement are specifically and appropriately designed to prevent the recurrence of the alleged misconduct that formed the basis for this action."); *In re Davita Healthcare Partners, Inc. Deriv. Litig.*, 2015 U.S. Dist. LEXIS 74372, at *3 (D. Colo. 2015) (same).

502-03 (D. Kan. 2012). The Tenth Circuit's four factors to be considered in assessing whether a settlement is fair, reasonable and adequate are: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002).

The proposed Settlement meets the foregoing criteria for notice, as it is eminently fair, reasonable, and adequate and should be preliminarily approved by the Court.

**B.    The Standards for Judicial Approval of Derivative Settlements.**

1.    The Law Favors Settlements

Courts strongly favor settlement as a method for resolving disputes. *See Amoco Prod. Co. v. Fed. Power. Comm'n*, 465 F.2d 1350, 1354 (10th Cir. 1972). Indeed, there is a strong policy favoring compromises which resolve litigation (*see, e.g., Williams v. First Nat'l Bank*, 216 U.S. 582, 30 S. Ct. 441, 54 L. Ed. 625 (1910); *MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*, 797 F.2d 799, 802 (9th Cir. 1986)), including compromises which resolve shareholder derivative actions. *See Maher v. Zapata*, 714 F.2d 436 (5th Cir. 1983); *Make a Difference Found., Inc. v. Hopkins,* No. 10-cv-00408-WJM-MJW, 2012 U.S. Dist. LEXIS 36251, at **7-8 (D. Colo. Mar. 19, 2012). Derivative actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. *Id*. at 455 (settlements of derivative actions are particularly favored because such litigation is "'notoriously difficult and unpredictable'") (citation omitted). Settlements of derivative actions are "favored for the reasons

that settlements generally are favored: disputes are resolved; the resources of litigants and the courts are saved; and, in the case of a derivative action, management can return its attention and energy from the courtroom to the corporation itself." *Zimmerman v. Bell*, 800 F.2d 386, 392 (4th Cir. 1986); *see also Mohammed*, 2014 U.S. Dist. LEXIS 118796, at *11.

2.    <u>The Role of the Court in Approval of a Derivative Settlement</u>

The settlement of a derivative action requires court approval.  Fed. R. Civ. P. 23.1. Rule 23.1(c) further requires that "[n]otice of a proposed settlement . . . must be given to shareholders or members in the manner that the Court orders."  As a result, approval of a settlement in a derivative action generally involves a two-step process.  First, the Court considers and, if appropriate, grants preliminary approval of the settlement, which triggers notice of the proposed settlement to the corporation's stockholders.  Second, the Court holds a fairness hearing and, following that hearing, determines whether to grant final approval of the settlement.

"The purpose of preliminary approval is to determine whether the proposed settlement is within the range of possible approval, *i.e.*, whether there is any reason not to notify the class members of the proposed settlement and proceed with a fairness hearing." *Freebird, Inc. v. Merit Energy Co.*, No. 10-1154-KHV, 2012 U.S. Dist. LEXIS 173075, at *11 (D. Kan. Dec. 6, 2012). As such, the Court's review is "less stringent than that applied to final approval." *Id.* at *12.  In this regard, the court must determine in its discretion whether a settlement is fair, reasonable, and adequate. *Maher*, 714 F.2d at 455; *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984); *In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986); *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). Here, the proposed Settlement enjoys the presumption that it is

9

fair and reasonable because it is the product of extensive arm's-length negotiations conducted by capable counsel who are well-experienced in class and derivative actions. *Lucas v. Kmart Corp*., 234 F.R.D. 688, 693 (D. Colo. 2006) ("Because the settlement resulted from arm's-length negotiations between experienced counsel . . . the Court may presume the settlement to be fair, adequate, and reasonable.") (citations omitted); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) (same).

### C. The Settlement Should Be Preliminarily Approved and Then Finally Approved After Notice to Current Merit Stockholders.

The Tenth Circuit has provided factors that a district court should look to when determining if a settlement is fair, reasonable, and adequate, which include: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Jones*, 741 F.2d at 324 (citing *In re King Res. Co. Sec. Litig*., 420 F. Supp. 610 (D. Colo. 1976)); *see also Rutter & Wilbanks Corp. v. Shell Oil Co*., 314 F.3d 1180, 1188 (10th Cir. 2002). The district court must exercise "sound discretion" in approving a proposed settlement. *Id*. at 1186-1187. As explained herein, applying these criteria demonstrates that this proposed Settlement warrants the Court's preliminary and final approval.

### 1. The Settlement Was Fairly and Honestly Negotiated

A settlement enjoys a presumption of fairness if it "is recommended by ... counsel after arm's-length bargaining." *Villanueva v. Morpho Detection, Inc*., No. 13-cv-05390, 2015 WL 4760464, at *6 (N.D. Cal. Aug. 12, 2015) (citation omitted). Here, the Settlement was reached

only after extensive arm's-length negotiations between counsel for the Parties which were closely overseen by an experienced mediator, Ms. Yoshida of Phillips ADR. *See, e.g., Todd v. STAAR Surgical Co.,* 2017 WL 4877417, at *2 (C.D. Cal. Oct. 24, 2017) (approving settlement facilitated by "experienced mediator Michelle Yoshida of Phillips ADR")*; Satchell v. Fed. Express Corp.,* 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("mediator's involvement in ... settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

The Settlement negotiations here included two mediation sessions and scores of other communications (both direct between counsel for the Parties and through the Mediator) spanning many months concerning Plaintiff's settlement demand, as well as Plaintiff's review of eight (8) separate productions of totaling approximately five-hundred twenty-five thousand (525,000) pages of internal corporate documents.  Plaintiff's review and analysis of discovery from the Securities Action was conducted in addition to Plaintiff's extensive pre-filing investigation, which included the review of confidential, non-public documents produced by Merit pursuant to § 16-10a-1602. This factor thus weighs in favor of preliminary approval of the proposed Settlement. *See, e.g., NVIDIA*, 2008 WL 5382544, at *3 (derivative settlement preliminarily approved where the settlement "appears to be the result of good faith arm's-length bargaining."); *Mehling v. N.Y. Life Ins. Co*., 246 F.R.D. 467, 473 (E.D. Pa. 2007) (settlement preliminarily approved where the parties engaged in "hard-fought and lengthy negotiation[s]").[6]

---

[6] Moreover, the arm's-length negotiations of the Settlement were conducted by highly-qualified counsel with extensive experience in stockholder derivative litigation, which militates in favor of preliminarily approving the Settlement. *See, e.g., Nat'l Rural Telecomm'ns Coop. v. DIRECTV, Inc*., 221

Further, the Parties did not begin negotiating the Fee and Expense Award until after all the substantive terms of the Settlement had been agreed upon. In fact, the Fee and Expense Award was the result of the Mediator's recommendation. This factor further demonstrates the fairness of the arm's-length Settlement because "the amount of attorneys' fees could not have affected the amount of Plaintiffs' recovery." *In re Chickie's & Pete's Wage and Hour Litig.*, No. 12-cv-6820, 2014 WL 911718, at *4 (E.D. Pa. Mar. 7, 2014).

> 2.  The Settlement Was Negotiated When Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt

The uncertainties and vagaries of further litigation of the Action demonstrate that the proposed Settlement is within the range of approval, and that preliminary approval should be granted. Although Plaintiff believes that the claims asserted in the Action were meritorious, there existed significant risks in continuing to prosecute the Action.

For example, Plaintiff did not make a pre-suit litigation demand for action by the Board before filing the Complaint. Absent the Settlement, whether Plaintiff had sufficiently alleged with particularity that pre-suit demand on the Board was excused would have been the subject of a motion to dismiss pursuant to Fed. R. Civ. P. 23.1.[7] Significantly, the analysis of demand futility at the pleading stage is no empty test -- indeed, it is well-settled that the standard for pleading pre-suit demand excusal in a derivative action is "stringent." *United Food & Commercial Workers*

---

F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts underlying litigation.").

[7] The prospect of the mere pendency of motions to dismiss, let alone their chances for success, creates uncertainty as to the outcome of a case. *See Ryskamp v. Looney*, No. 10-cv-00842-WJM-KLM, 2012 U.S. Dist. LEXIS 114190, at *9 (D. Colo. Aug. 14, 2012) ("Indeed, with various Motions to Dismiss still pending at the time of the settlement, the Plaintiff's prospects for success in this action were certainly in question").

*Union, et al. v. Zuckerberg*, 262 A.3d 1034, 1048 (Del. 2021) (*quoting Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000)).[8]

Even assuming Plaintiff could have overcome a Rule 23.1 motion to dismiss, proving breaches of fiduciary duty by the Individual Defendants would be hard fought and difficult. Even if liability were established, the amount of recoverable damages would still have posed significant issues and would have been subject to further litigation. *See, e.g., NVIDIA*, 2008 WL 5382544, at *3 (preliminarily approving the derivative settlement after balancing the risks faced by plaintiffs and defendants). Plaintiff's Counsel also considered the best interests of Merit, as the Action is brought on its behalf, including the risks that ongoing litigation could result in loss or substantial diminution of available directors' and officers' insurance and financial hardship to Merit with risk that the Individual Defendants (absent insurance) would be unable to satisfy fully any judgment that might be entered in the Action.

It is also clear that even a victory at trial is no guarantee that the judgment would ultimately be sustained on appeal or by the trial court. Add to this post-trial and appellate risks, the difficulty and unpredictability of a lengthy and complex trial and the benefits of the Settlement become all the more apparent. The proposed Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after several more years of litigation, while providing Merit with substantial benefits immediately. *See, e.g., Maher*, 714 F.2d at 466 (derivative settlement approved where "the parties' conclusion that any possible benefit to Zapata

---

[8] Plaintiff respectfully submits that in connection with a Rule 23.1 motion to dismiss in this Action, this Court would very likely look to Delaware's well-developed corporate law. *See, e.g., Stender v. Archstone-Smith Operating Trust,* 910 F.3d 1107, 1114 (10th Cir. 2018); *In re Zagg, Inc.,* 2014 U.S. Dist. LEXIS, **9-17 (D. Utah Oct. 9, 2014).

from pursuing the causes of action would be more than offset by the additional cost of litigation was based on an intelligent and prudent evaluation of their case").[9]

       3.     The Settlement's Value Outweighs the Possibility of Future Relief in <u>View of the Serious Risks Posed by Continued Litigation</u>

As discussed herein, the Settlement of the Action provides substantial benefits to Merit in the form of enhanced corporate governance provisions that directly address the wrongdoing alleged and attempt to prevent future reoccurrences. The determination of a "reasonable" settlement is not susceptible to a singular definition, rather, as one circuit court has explained, "there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). Given the obstacles and uncertainties inherent in this complex Action, the Settlement is an excellent result and is unquestionably superior to another "possibility" which certainly exists – little or no recovery. It is also clear that even a victory at trial is no guarantee that the judgment would ultimately be sustained on appeal. Substantial judgments awarded by trial courts have been reversed on appeal. *See, e.g., In re Apollo Grp., Inc. Sec. Litig*., No. 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008) (jury verdict in favor of plaintiffs vacated and judgment as a matter of law entered in favor of defendants); *In re Apple Comput. Sec. Litig*., No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict in favor of plaintiff overturned and j.n.o.v. entered in favor of defendant); *Berkley Photo, Inc. v. Eastman Kodak Co*., 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial). Add to these appellate risks the difficulty and unpredictability of a lengthy

---

[9] *Maher* recognized that the avoidance of further litigation expenses "both monetarily in the form of litigation fees and expenses, and non-monetarily in the form of disruption and distraction of management, and threatened impairment of the Corporation's credit and goodwill, are important and valid reasons for seeking a settlement, and may warrant its approval." *Maher*, 714 F.2d at 467.

and complex trial – where witnesses could suddenly become unavailable or the fact-finder could react to the evidence in unforeseen ways – and the benefits of the Settlement become all the more apparent.

Another factor in favor of the Settlement is the complexity, expense, and likely duration of the litigation. The Action is obviously complex. If not for this Settlement, the Action would have continued to be fiercely contested by the Parties. Continued litigation here would be extremely complex, costly and of substantial duration. Assuming Plaintiff survived Defendants' anticipated pleading-stage attack on the Complaint, document discovery would need to be completed, depositions would have to be taken, experts would have to be designated, and expert discovery conducted.  Defendants' motion(s) for dismissal would have to be briefed and argued, and if Plaintiff prevailed, a pre-trial order would have to be prepared and motions *in limine* would have to be filed and argued. A trial could occupy attorneys on both sides and the Court for weeks, if not months. Moreover, any judgment favorable to Plaintiff would likely be the subject of post-trial motion practice and appeal(s), which would prolong the Action for years with the ultimate outcome uncertain.

In light of the complexity of the Action, and the time and expense burdens which continued litigation would undoubtedly produce, the Settlement should be preliminarily approved.

### 4.    The Parties Agree That the Settlement Is Fair and Reasonable

Highly-experienced counsel, operating at arm's length, have weighed all of the foregoing factors and endorse the Settlement.  *See* firm biographies of Plaintiff's Counsel attached hereto as Exhibits 2-3.  As courts have noted, "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re MRV Commc'ns,*

15

*Inc. Derivative Litig.*, No. CV 08-03800 GAF MANX, 2013 WL 2897874, at *5 (C.D. Cal. June 6, 2013). Plaintiff and Defendants, acting by and through the Board, and the respective counsel for each, have independently considered the Settlement and all agree that it is in the best interests of the Company and Current Merit Stockholders. Stipulation ¶2.2, Stipulation at 6.

Here, Plaintiff's Counsel and Defendants' counsel are seasoned practitioners in shareholder litigation. The Settlement was reached only after counsel for the Parties had the opportunity to consider the relative strengths and weaknesses of their respective claims and defenses and were able to reach the agreement embodied in the Stipulation after long and protracted settlement negotiations overseen by the Mediator. The Parties believe that the Settlement is an excellent result for Merit and Current Merit Stockholders and, therefore, recommend its approval.

For all of the foregoing reasons, Plaintiff respectfully submits that the Settlement should be preliminarily approved and that the Preliminary Order should be entered.

**D.    The Agreed-To Fee and Expense Award Is Fair and Reasonable.**

In addition, the agreed-to Fee and Expense Award to be paid to Plaintiff's Counsel is fair and reasonable. In recognition of the substantial benefits bestowed upon Merit and Current Merit Stockholders as a result of the initiation, prosecution, pendency, and settlement of the Action, Merit and/or its insurers have agreed to pay Plaintiff's Counsel the Fee and Expense Award, as attorneys who prosecute a shareholder derivative action that confers "substantial benefit" on the corporation are entitled to an award of attorneys' fees. *See Mills v. Elec. Auto-Life Co.*, 396 U.S. 375 (1970). The Parties negotiated the Fee and Expense Award only after the substantive terms of the Settlement were agreed to, and ultimately agreed on the amount of the Fee and Expense Award

after accepting a Mediator's proposal from Ms. Yoshida. Moreover, the U.S. Supreme Court has endorsed this type of consensual resolution of attorneys' fee issues in these kinds of cases as the ideal toward which litigants should strive. In *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983), the Supreme Court stated: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."

In shareholder derivative cases, where the economic value of corporate therapeutic benefits can be difficult to precisely quantify, an agreement on the parameters of a fee and expense award is particularly appropriate and regularly approved by courts. *See Atmel*, 2010 WL 9525643, at *11 ("the Court concludes that the agreed-upon amount of attorneys' fees and costs ... is reasonable in light of the overall benefit of the settlement to Atmel and its shareholders."); *Rambus*, 2009 WL 166689, at *3 ("Attorneys who prosecute a shareholder derivative action that confers 'substantial benefit' on the corporation are entitled to an award of attorneys' fees ... [C]ourts consistently have approved attorneys' fees and expenses in shareholder actions where the plaintiffs' efforts resulted in significant corporate governance reforms but no monetary relief.") (citations omitted).[10]

### E. The Proposed Notice to Current Merit Stockholders Is Reasonable.

The purpose of providing stockholders notice of a proposed settlement is to "apprise interested parties of the pendency of the action and afford them an opportunity to present their

---

[10] *See, e.g., City of Pontiac Gen. Emps.' Ret. Sys. v. Langone*, No. 2006-cv-122304, Findings of Fact in Support of Order and Final Judgment (Fulton County, Ga. June 10, 2008) (awarding $14.5 million fee); *Unite Nat'l Ret. Fund v. Watts*, No. CIV.A. 04CV3603DMC, 2005 WL 2877899, at *5 (D.N.J. Oct. 29, 2005) (awarding $9.2 million fee); *In re AOL Time Warner S'holder Derivative Litig.*, No. 02 CIV. 6302 (CM), 2010 WL 363113, at *1 (S.D.N.Y. Feb. 1, 2010) ($8.8 million fee); *Warner v. Lesar*, No. 2011-09567, Order Approving Settlement and Judgment (Tex. Dist. Ct., Harris Cnty. Oct. 1, 2012) (awarding $7.75 million fee); *In re Gen. Motors Corp. Derivative Litig.*, MDL No. 06-1749, Order Approving Settlement (E.D. Mich. Dec. 22, 2008) (awarding $5.38 million fees); *In re F5 Networks, Inc. Derivative Litig.*, No. 06- 0794 (W.D. Wash.) (awarding $5 million fee); *Rowe v. Fishman*, No. 04-4576 (D. Minn. Sept. 6, 2007) ($5.25 million fee).

objections." *Villanueva*, 2015 WL 4760464, at *7 (citation omitted). The Parties have agreed, subject to Court approval, that Merit will notify Current Merit Stockholders of the proposed Settlement by: (i) causing a press release to be issued that contains the contents of the Summary Notice; (ii) causing a Current Report on Form 8-K to be filed with the U.S. Securities and Exchange Commission (the "SEC") that contains the contents of the Summary Notice, attaching a copy of the Stipulation to the 8-K;[11] and (iii) providing a link in the 8-K to the Stipulation and Notice that shall be posted on the Investor portion of Merit website.  See Stipulation ¶3.2. The proposed forms of notice (attached as Exhibits C and D to the Stipulation) set forth, *inter alia*, the date and location of the final Settlement Hearing, the Parties' contentions, the reasons for the Settlement, and the procedure for objecting to the Settlement, including the Fee and Expense Award. *See* Stipulation, Exhibits C and D.

Accordingly, Plaintiff respectfully submits that the proposed forms of notice fully satisfy Rule 23.1(c) and due process requirements, as they will fairly and reasonably apprise Current Merit Stockholders of the essential terms of the Settlement and afford them an opportunity to present any objections thereto. Indeed, numerous courts have approved similar forms of notice and notice distribution plans in connection with settlements of other derivative actions, thus confirming that the Parties' proposed notice plan here is appropriate.  *See e.g., Mohammed v. Ells*, No. 12-cv-1831-WJM-MEH (ECF No. 83) (D. Colo. April 18, 2014); *Bushansky v. Armacost*, 2014 WL 2905143 (N.D. Cal. June 25, 2014) (requiring notice plan to include a link on defendant's investor relations

---

[11] Corporate filings with the SEC are the primary source of current information for shareholders regarding publicly traded companies such as Merit, and Form 8-K specifically is the SEC filing which companies use "to announce major events that shareholders should know about." https://www.sec.gov/fast-answers/answersform8khtm.html.

18

website, a press release to be issued by defendant, and a Form 8-K filing with the SEC); *Rambus*, 2009 WL 166689 (approving settlement where notice included posting on corporation's website, press release, and a Form 8-K filing with the SEC).

**F.    The Nominal Incentive Award Is Reasonable and Justified**

Finally, as provided for in the Stipulation, Plaintiff concurrently intends to seek approval for the Incentive Award in the amount of $2,500, which amount shall be paid from Plaintiff's Counsel's Fee and Expense Award.  Stipulation ¶5.6.  Plaintiff's Counsel respectfully submits that the nominal Incentive Award for Plaintiff should be approved in light of the significant benefits Plaintiff helped to create for Merit and all Current Merit Stockholders.

There is a long history of federal courts authorizing incentive awards for representative plaintiffs in shareholder actions. *See, e.g., Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 355 (S.D.N.Y. 2005), *aff'd in part, vacated in part, remanded sub nom. Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) (based on common law's recognition of the important policy role plaintiffs play in representative actions); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (awarding two class representatives $55,000 each and three class representatives $35,000 each). As noted by the U.S. District Court for the District of Minnesota, "[s]uch enforcement is vital because if there were no individual shareholders willing to step forward and pursue a claim on behalf of other investors, many violations of law might go unprosecuted." *In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005). Here, as the only Merit shareholder to file a shareholder derivative action on the Company's behalf based on the misconduct alleged in the Inspection Demand and the Complaint, Plaintiff's actions put the Company in a place to substantially benefit thereby. *Rodriguez v. W.*

*Publ'g Corp*., 563 F.3d 948, 958-59 (9th Cir. 2009) ("[Incentive awards] are intended to . . . make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.").  In light of Plaintiff's efforts, the nominal Incentive Award in the amount of $2,500 is reasonable.  *Hamilton v. Juul Labs, Inc*., No. 20-cv-03710-EMC, 2021 U.S. Dist. LEXIS 221416, at *40 (N.D. Cal. Nov. 16, 2021) (suggesting that incentive awards of up to $5,000 are "presumptively reasonable").

## IV.    PROPOSED SCHEDULE OF EVENTS

Plaintiff, with the consent of the Defendants, requests that the Court: (i) grant preliminary approval of the Settlement; (ii) approve, as to form and content, the Notice and Summary Notice, annexed as Exhibits C and D to the Stipulation; (iii) hold that the issuance of a press release containing the contents of the Summary Notice, the filing of a Current Report on SEC Form 8-K containing the contents of the Summary Notice and attaching a copy of the Stipulation, and providing a link in the 8-K to the Stipulation and Notice that shall be posted on the Investor portion of Merit's website complies with due process and the rules of this Court, is the best notice practicable under the circumstances, and shall constitute due and sufficient notice for all purposes to Current Merit Stockholders; and (iv) set a date for the Settlement Hearing. The Parties propose the following schedule:

| | |
|---|---|
| Issuance of Company press release containing the contents of the Summary Notice | Within 10 business days after the Court enters the Preliminary Approval Order |
| Filing of Notice via Form 8-K with the SEC | Within 10 business days after the Court enters the Preliminary Approval Order |

| | |
|---|---|
| Posting of Notice on Merit's website | Within 10 business days after the Court enters the Preliminary Approval Order |
| Last day for counsel for Merit to file appropriate affidavit with respect to preparation and dissemination of Notice and Summary Notice | At least 10 business days prior to Settlement Hearing |
| Filing of all papers in support of the Settlement, including the Fee and Expense Award | 28 calendar days before the Settlement Hearing |
| Last day for Current Merit Stockholders to comment on the Settlement | 14 calendar days before the Settlement Hearing |
| Filing of all reply papers in support of the Settlement, including responses to objections, if any | 7 calendar days before the Settlement Hearing |
| Final Settlement Hearing | Approximately 45 days after the Notice Date[12] |

DATED: August 26, 2022

Respectfully submitted,

**ANDERSON & KARRENBERG**

/s/ *Jared D. Scott*
Jared D. Scott
***Utah Counsel for Plaintiff***

**SHUMAN, GLENN & STECKER**
Kip B. Shuman
100 Pine Street, Suite 1250
San Francisco, CA 94111
(303) 861-3003

---

[12] Plaintiff is prepared to coordinate a mutually agreeable date with the Court's Deputy Clerk for inclusion in the Preliminary Approval Order prior to entry.

**SHUMAN, GLENN & STECKER**
Rusty E. Glenn, *admitted pro hac vice*
600 17th Street, Suite 2800 South
Denver, CO 80202
(303) 861-3003

**SHUMAN, GLENN & STECKER**
Brett D. Stecker
326 W. Lancaster Ave.
Ardmore, PA 19003
(303) 861-3003

*Additional Counsel for Plaintiff*